# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MELVIN RANDLE | § | CIVIL ACTION NO.: 4:17-1149 |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HARRIS COUNTY EMERGENCY CORP., | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

**NOW COMES** Plaintiff MELVIN RANDLE ("Plaintiff") in the above-identified action complaining of and about Defendant HARRIS COUNTY EMERGENCY CORP. ("Defendant" or "HCEC"), and files this Original Complaint as follows:

### I. PARTIES

1. Plaintiff MELVIN RANDLE is an individual residing in Houston, Harris County, Texas. Plaintiff is a citizen of the United States and the State of Texas.

2. Defendant HARRIS COUNTY EMERGENCY CORP. is a domestic non-profit corporation conducting business in Houston, Harris County, Texas. Defendant may be served with process through its registered agent, John M. Smith, 2800 Aldine Bender Road, Houston, Texas 77032. As such, Plaintiff is requesting a waiver of summons from Defendant at this time.

### II. JURISDICTION AND VENUE

3. This is an action brought by Plaintiff against HCEC on the grounds that Plaintiff was discriminated against by HCEC because of his race (i.e., black) and color (i.e., darker skin

color) by being terminated from his employment with HCEC, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

4. This is also an action brought by Plaintiff against HCEC on the grounds that Plaintiff was discriminated against because of his race (i.e., black) by being terminated from his employment with HCEC, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 through § 1983 ("§ 1981").

5. Additionally, this is an action brought by Plaintiff against HCEC on the grounds that Plaintiff was terminated from his employment because of his race (i.e., black) and color (i.e., darker skin color), in violation of the Texas Commission on Human Rights Act, Texas Labor Code § 21.051, *et seq.* ("TCHRA").

6. Furthermore, this is an action brought by Plaintiff against HCEC on the grounds that Plaintiff was retaliated against by HCEC by being terminated from his employment with HCEC after engaging in protected activity, in violation of Title VII, § 1981, and the TCHRA.

### III. NATURE OF THE ACTION

7. This is an action being brought against HCEC pursuant to: (a) Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-2(a); (b) the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; and (c) the TCHRA, Texas Labor Code § 21.051, *et seq.*. These claims are being brought on the grounds that Plaintiff was discriminated against because of his race (i.e., black) and his color (i.e., darker skin color). Moreover, Plaintiff's claims are being brought under those same statutes for HCEC's retaliation against Plaintiff after Plaintiff complained about the race and color discrimination.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed a Charge of Discrimination based on race, color, and

retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") (i.e., Charge No.: 460-2015-02442). Subsequently, on March 23, 2017, the EEOC issued Plaintiff a Notice of Right Sue. (See Exhibit 1, which is being concurrently filed with this Complaint). Plaintiff files this lawsuit within ninety (90) days of receiving the EEOC's Notice of Right to Sue. Therefore, Plaintiff's lawsuit is being timely filed.

## V. FACTS

9. Plaintiff worked at HCEC for more than six (6) years. HCEC hired Plaintiff as a mechanic. But, Plaintiff was able to work his way up to essentially being a maintenance supervisor at HCEC. Throughout his tenure, Plaintiff exceeded HCEC's performance expectations. Specifically, Plaintiff's annual performance evaluations were perfect; and, for each year that Plaintiff worked for HCEC, he received the maximum performance bonus award. Additionally, Plaintiff received numerous other merit based salary increases and bonuses.

10. Almost immediately after Plaintiff began working for HCEC, it became clear that HCEC condoned race and color discrimination. As an example, HCEC's maintenance shop manager, Thomas "Willie" Sanders ("Mr. Sanders"), demonstrated a negative attitude toward non-white employees. Mr. Sanders made racially discriminatory comments and treated white employees more favorably than employees of other races and colors. On one occasion, Mr. Sanders told Ben Rojas ("Mr. Rojas") (who is Hispanic) that even though he was a mechanic, he needed to cut the grass before he was allowed to work on trucks. On another occasion, Mr. Sanders said to Plaintiff in reference to Job Greer ("Mr. Greer") (who is Hispanic): "I thought Mexicans were supposed to be hard workers, but he is lazy". Mr. Sanders did not restrict his race and color discrimination to work-related matters. In fact, Mr. Sanders took the opportunity to comment about blacks almost anytime he saw them. Mr. Sanders' frequent comments

included the following: "Excuse my language, but those niggers don't need to be hanging out in front of the store by Jeremy's house" and "the police should run them off, but they'd just go to another store and mess up that neighborhood too".

11. While Mr. Sanders blatantly made discriminatory comments about individuals' races and colors, the discriminatory attitude permeated throughout HCEC. On numerous occasions, Walter "Lorenzo" Matthews ("Mr. Matthews"), who was one of Plaintiff's subordinates, expressed his discriminatory views in the workplace at HCEC. Mr. Matthews' discriminatory remarks include (but are not limited to) the following: "I'm sick of Jessie Jackson, Al Sharpton and the rest of black people complaining all the time – they should just get a job" and "Black people don't want to work, they'd rather steal and commit crimes than get a job". Additionally, Mr. Matthews further told Plaintiff "you shouldn't go where I'm from (Arkansas), because me and my friend don't like black so we kill them". On multiple occasions, Mr. Matthews would stand at work smoking a cigarette while Johnson Stanyoi ("Mr. Stanyoi") (who is black) and Mr. Greer did manual labor, as Mr. Matthews made comments such as "I work the hell out of them and sit smoking with other white men" or "boy get back to work". When Plaintiff complained to Mr. Sanders about Mr. Matthews' discriminatory comments and conduct, Mr. Sanders told Plaintiff that Mr. Sanders himself was the one who gave Mr. Matthews permission to treat them in the manner that Mr. Matthews was treating them.

12. In addition to making and condoning discriminatory comments (towards individuals' races and colors), Mr. Sanders required Plaintiff to perform the duties of the maintenance shop supervisor without the title or salary. Plaintiff, who had been performing the duties of the maintenance shop supervisor for some time, eventually asked about actually being officially promoted to the supervisor position with the title and the accompanying wages of a

supervisor position. Mr. Sanders replied that HCEC did not have a need for a supervisor. At that point, Plaintiff, who had become reluctant to continue performing supervisor duties without the accompanying title or wages, had to threaten to leave HCEC before Mr. Sanders would consider promoting Plaintiff to the supervisor role, albeit without the commensurate pay increase. In fact, Plaintiff had not received a pay increase since approximately August of 2011.

13. Around that time, Plaintiff learned that HCEC would not tolerate complaints about discrimination. Per HCEC's policy, employees were supposed to report discrimination complaints directly up the chain of command. Thus, all maintenance shop employees were required to report such complaints to Mr. Sanders because he was the manager. When Mario Jasso ("Mr. Jasso"), who was a mechanic, grew displeased that Mr. Sanders refused to report his discrimination complaints to management, Mr. Jasso went to HCEC's human resources department and the board of directors to complain about it. The next day, Mr. Jasso's employment was terminated. Multiple times throughout Plaintiff's employment, Plaintiff went to Mr. Sanders and asked him to forward his complaints of race discrimination up the chain of command. However, each time, Mr. Sanders not only refused to do so, but Mr. Sanders also increased his negative treatment towards Plaintiff.

14. Mr. Sanders' race and color preference was further demonstrated by his personnel decisions. For example, less than one (1) week after HCEC hired a mechanic named Cecil Jones ("Mr. Jones") (who is black), Mr. Sanders began insisting that Mr. Jones be terminated because Mr. Sanders said that Mr. Jones was allegedly slow and lazy, which was suspicious because Mr. Sanders never actually worked with Mr. Jones. Notably, Mr. Sanders replaced Mr. Jones with a mechanic named Brian Whitfield ("Mr. Whitfield") (who is white), who was significantly slower at completing tasks than Mr. Jones, which Plaintiff observed first hand, as Plaintiff worked with

both employees (i.e., Mr. Jones and Mr. Whitfield). Mr. Whitfield received numerous verbal warnings from both Mr. Sanders and Plaintiff for clocking in before his shift started and talking to his co-workers rather than actually working. In addition, when Plaintiff assigned tasks to Mr. Whitfield, Mr. Whitfield consistently refused to perform the tasks until Mr. Whitfield spoke to Mr. Sanders about it (despite the fact that Plaintiff was Mr. Whitfield's direct supervisor).

15. Ultimately, on September 25, 2014, when Plaintiff returned to the shop, Plaintiff, again, observed Mr. Whitfield sitting around with an uncompleted assignment. As such, Plaintiff sent Mr. Sanders a text message informing Mr. Sanders about Mr. Whitfield's conduct and suggested terminating Mr. Whitfield. In response, Mr. Sanders said he agreed with Plaintiff, but told Plaintiff that Plaintiff was the manager and had the authority to make that decision. Thereafter, Mr. Sanders replaced Mr. Whitfield with JR Boudreaux ("Mr. Boudreaux") (who is white). Mr. Boudreaux arrived at HCEC's facility with a sticker on his window of a white man urinating on President Barack Obama, which was a violation of county and HCEC's company policy. Despite numerous employees commenting on the inappropriateness of Mr. Boudreaux's racist sticker, HCEC never took remedial action.

16. On October 28, 2014, Plaintiff overheard Mr. Matthews, who Plaintiff supervised, making derogatory comments about Plaintiff and questioning Plaintiff's authority (behind Plaintiff's back). As soon as Plaintiff completed the task he was working on, Plaintiff called Mr. Matthews into his office to explain that such insubordinate behavior was unacceptable and would not be tolerated. In response, Mr. Matthews stated that Plaintiff was not his boss; and, then, Mr. Matthews aggressively stepped toward Plaintiff asking "do you want a piece of me?". As such, Plaintiff stepped back and told Mr. Matthews that he was terminated. Mr. Matthews responded to Plaintiff by saying: "No I'm not—you can't fire me. Nothing is going to happen to me". As

Plaintiff picked up the telephone to call Mr. Sanders, Mr. Sanders walked into the maintenance shop. As such, Plaintiff explained the situation to Mr. Sanders about Mr. Matthews. After he did so, Mr. Sanders confirmed that Plaintiff was Mr. Matthews' boss. But, then, Mr. Sanders went to his office and called each of them, separately, into his office. Mr. Sanders told Plaintiff that he would not fire Mr. Matthews because he was a good worker and admonished Plaintiff for confronting Mr. Matthews. Later that day, Mr. Sanders told Plaintiff that from then on, Mr. Matthews was going to be directly reporting to Mr. Sanders. When Plaintiff asked Mr. Sanders the reason why behind Mr. Sanders' decision to have Mr. Matthews directly report to him (instead of to Plaintiff anymore), Mr. Sanders told Plaintiff that the decision was made by his bosses.

17. Over the next few days, Mr. Sanders brought up the situation with Mr. Matthews several times to Plaintiff. Each time, Mr. Sanders made excuses for Mr. Matthews' behavior, such as "maybe Mr. Matthews was having a bad day because he quit smoking" or "maybe Mr. Matthews got into a fight with his wife". After Mr. Sanders made those excuses for Mr. Matthews, Mr. Sanders placed the blame on Plaintiff for the situation regarding Mr. Matthews. Although Plaintiff was well within his supervisory authority to discipline Mr. Matthews for his insubordinate behavior, Mr. Sanders went as far as to say that Mr. Sanders should have written Plaintiff up (while implying that the write up would be because Plaintiff spoke to a white person that way).

18. Eventually, the tension resulting from HCEC's racial and color discrimination as well as the retaliation became too much for Plaintiff. Thus, on November 3, 2014, Plaintiff, with full knowledge of what happened to Mr. Jasso (who was the last employee to get terminated after he complained about discrimination to those individuals that held a position above Mr. Sanders),

took his complaints directly to Heath White ("Mr. White"), who was HCEC's Vice President. After Plaintiff told Mr. White about the discriminatory events over the last six (6) years, Mr. White simply responded by saying "There are three sides to every story, what you say, what the other person says, and what I think". Plaintiff believed that HCEC valued his employment with HCEC. As such, in an attempt to spark an investigation within HCEC about the discrimination, Plaintiff told Mr. White that he wanted to put in his two (2) week's notice. Mr. White replied that Plaintiff would be paid for his two (2) weeks; but, that Mr. Sanders may want Plaintiff to leave that day. At that point, it became clear to Plaintiff that HCEC not only knew about the severe and pervasive race and color discrimination, but also condoned it. Due to the discrimination and retaliation, Plaintiff was terminated from his employment on November 7, 2014.

## VI. CAUSES OF ACTION

### COUNT 1: TITLE VII RACE DISCRIMINATION

19. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

20. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his race (i.e., black).

21. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's employment status because of Plaintiff's race (i.e., black), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

///

## COUNT 2: TITLE VII COLOR DISCRIMINATION

22. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

23. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his skin color (i.e., darker skin color).

24. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's employment status because of Plaintiff's skin color (i.e., darker skin color), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## COUNT 3: § 1981 RACE DISCRIMINATION

25. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

26. Defendant intentionally engaged in unlawful discriminatory practices against Plaintiff because of his race (i.e., black).

27. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's employment status because of Plaintiff's race (i.e., black), in violation of 42 U.S.C. § 1981.

## COUNT 4: TCHRA RACE DISCRIMINATION

28. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

29. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his race (i.e., black).

30. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's employment status because of Plaintiff's race (i.e., black), in violation of Texas Labor Code § 21.051 et seq..

### COUNT 5: TCHRA COLOR DISCRIMINATION

31. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

32. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his color (i.e., darker skin color).

33. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's employment status because of Plaintiff's color (i.e., darker skin color), in violation of Texas Labor Code § 21.051 et seq..

### COUNT 6: TITLE VII RETALIATION

34. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

35. Defendant intentionally retaliated against Plaintiff by terminating Plaintiff because Plaintiff complained to HCEC about the race and color discrimination that Plaintiff experienced at HCEC, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e-2(a).

## COUNT 7: § 1981 RETALIATION

36. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

37. Defendant intentionally retaliated against Plaintiff by terminating Plaintiff because Plaintiff complained to HCEC about the race discrimination that Plaintiff experienced at HCEC, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## COUNT 8: TCHRA RETALIATION

38. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

39. Defendant intentionally retaliated against Plaintiff by terminating Plaintiff because Plaintiff complained to HCEC about the race and color discrimination that Plaintiff experienced at HCEC, in violation of the TCHRA, Texas Labor Code §21.051 et seq..

## VII. JURY DEMAND

40. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff has submitted the jury demand and herein submits the jury fee.

## VIII. PRAYER

41. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have a judgment against Defendant for the following:

    a.    All damages that Plaintiff may be entitled to pursuant to this Original Complaint (or any amendment thereto), including (but not limited to) back pay wage, future wages, reinstatement, upgrading, and compensation for benefits not received;

    b.    Compensatory damages, including (but not limited to) emotional distress;

c. Punitive damages (in an amount above the minimum jurisdictional limits of the Court);

d. Attorneys' fees (as allowed by law with conditional awards in the event of an appeal);

e. Pre-judgment interest (at the highest rate permitted by law);

f. Post-judgment interest (at the highest rate permitted by law from the time of the judgment until it is paid);

g. Costs of Court; and

h. Such other and further relief, at law or in equity, that Plaintiff may be entitled to pursuant to this Original Complaint (or any proper amendment thereto).

Respectfully submitted,



By: _____
Alfonso Kennard, Jr.
Texas Bar No.: 24036888
Southern District ID No.: 713316
2603 Augusta Dr., Suite 1450
Houston, TX 77057
Telephone No.: (713) 742-0900
Fax No.: (713) 742-0951
E-Mail: Alfonso.Kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

**OF COUNSEL FOR PLAINTIFF**



Lance Blankenship
Texas Bar No.: 24040534
Southern District ID No.: 0980101
2603 Augusta Dr., Suite 1450
Houston, TX  77057
Telephone No.: (713) 742-0900
Fax No.: (713) 742-0951
E-Mail: Lance.Blankenship@kennardlaw.com

Davina Bloom
Texas Bar No.: 24091586
Southern District No.: 2851454
2603 Augusta Dr., Suite 1450
Houston, TX  77057
Telephone No.: (713) 742-0900
Fax No.: (713) 742-0951
E-Mail: Davina.Bloom@kennardlaw.com